IN THE SUPREME COURT OF NORTH CAROLINA

2022-NCSC-67

No. 24A21

Filed 17 June 2022

IN THE MATTER OF: B.B., S.B., S.B.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) (2019) from an order entered on 29 October 2020 and an order entered on 23 February 2022 after remand, both by Judge Wesley W. Barkley in District Court, Burke County. Heard originally in the Supreme Court on 5 October 2021 and calendared again for argument in the Supreme Court on 10 May 2022 but determined on the record and briefs without further oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*Amanda C. Perez for petitioner-appellee Burke County Department of Social Services.*

*Olabisi A. Ofunniyin and Thomas N. Griffin III for appellee Guardian ad Litem.*

*W. Michael Spivey for respondent-appellant mother.*

BARRINGER, Justice.

¶ 1    Respondent appeals from an order terminating her parental rights to three of her minor children, B.B. (Bob), S.B. (Sally) and S.B. (Susan).[1] After careful review,

---

[1] Pseudonyms are used in this opinion to protect the juveniles' identities and for ease of reading.

we affirm the trial court's order.

## I. Background

On 14 September 2018, the Burke County Department of Social Services (DSS) received a Child Protective Services (CPS) report stating that respondent was incarcerated, and Bob, Sally, and Susan were living in a car with their father. The report further alleged that the father was suspected of using methamphetamine. DSS confirmed that respondent was incarcerated and met with the father at the home of his sister. The father claimed that he and the children were staying at his sister's home. The father signed a Safety Assessment in which he agreed the children would remain in his sister's home, and he would submit to a substance abuse screening within twenty-four hours. However, when a social worker returned to the home on 19 September 2018, the father had left the home and taken the children with him without providing any contact information.

On 21 September 2018, DSS was notified that the father brought Bob to school. Bob was wearing the same dirty and torn clothing that he had worn the previous day and stated that he had not eaten since the day before. At the end of the school day, nobody arrived to pick up Bob from school. DSS then contacted respondent, who was still incarcerated, and attempted without success to locate an appropriate alternative caregiver for the children based on information from respondent. Meanwhile, the father's sister notified DSS that the father had left Sally and Susan in her care

without providing his contact information or making a plan of care for the children. The father's sister also refused to continue caring for the children. At the time, Bob had eight unexcused absences from school and one tardy; Sally had a scar on her torso, which she stated was a cut with a knife from her father; and Susan had a diaper rash, fever, and two red bumps on her torso. Additionally, all the children had an odor about them. DSS was unable to locate the father.

¶ 4    The same day, DSS filed a petition alleging that the juveniles were neglected and dependent and obtained non-secure custody of Bob, Sally, and Susan. On 26 September 2018, DSS filed an amended petition.

¶ 5    Meanwhile, on 24 September 2018, respondent was released from custody, but she still had pending criminal charges in four counties including a probation violation. Respondent admitted to DSS the next day that she was unable to get the juveniles regular medical care and that for the last six months she had unstable housing. Respondent also refused to submit to a drug screen; she wanted to consult her attorney first. Respondent had previously tested positive for methamphetamines in 2017 and had a history of drug use. Susan tested positive at birth in 2017 for amphetamines, cannabinoids, and methamphetamine via meconium screening.

¶ 6    Before the hearing on the petition on 10 January 2019, respondent stipulated to the foregoing facts and stipulated that she was not employed and living with friends in a home that was not appropriate for children. Based upon stipulations

made by respondent and the father, the trial court entered an order on 24 January 2019 adjudicating Bob, Sally, and Susan as neglected and dependent juveniles. The trial court continued custody of the juveniles with DSS. The trial court also ordered respondent to comply with an out-of-home family services agreement (case plan) and granted her supervised visitation.

¶ 7        The trial court held review hearings on 7 March 2019 and 16 May 2019. The trial court entered review orders from both hearings in which it found as fact that respondent was unemployed, did not have stable housing, had not maintained consistent contact with DSS, and had not engaged in any case plan services.

¶ 8        Following a permanency-planning-review hearing held on 15 August 2019, the trial court entered an order on 5 September 2019. The trial court found as fact that respondent had recently been arrested on drug related charges in Buncombe County. The trial court again found as fact that respondent was not engaged in case plan services and had failed to maintain consistent contact with DSS. The trial court adopted a primary permanent plan of adoption with a secondary plan of reunification.

¶ 9        On 22 October 2019, DSS moved to terminate respondent's parental rights to each of the three juveniles on the grounds of neglect, willful failure to make reasonable progress, willful failure to pay for the cost of care for the juveniles, and abandonment. N.C.G.S. § 7B-1111(a)(1)–(3), (7) (2021). Following a hearing held on 4 September 2020, the trial court entered an order on 29 October 2020 in which it

determined grounds existed to terminate respondent's parental rights pursuant to each of the grounds alleged in the motion. The trial court further concluded it was in the juveniles' best interests that respondent's parental rights be terminated. Accordingly, the trial court terminated respondent's parental rights.[2] Respondent entered a notice of appeal on 2 November 2020. On 13 November 2020, the trial court entered an amended termination order.

¶ 10    On appeal, respondent presents four arguments. First, the trial court lacked jurisdiction to enter an amended termination order because notice of appeal had already been given, and the trial court made substantive, not clerical, changes. Second, the trial court abused its discretion by denying respondent's motion to continue. Third, the trial court erred by concluding that grounds existed to terminate respondent's parental rights. Fourth, respondent received ineffective assistance of counsel.

¶ 11    On 5 October 2021, this Court heard oral arguments concerning this appeal. Thereafter, this Court issued an order in the exercise of its discretion remanding the case "so the parties may supplement the record with evidence related to the trial court's statements on the record concerning respondent-mother's motion to continue on 4 September 2020" and "for the trial court to hear respondent-mother's claim of

---

[2] The trial court's order also terminated the parental rights of the juveniles' father, but he did not appeal and is not a party to the proceedings before this Court.

ineffective assistance of counsel." *In re B.B.*, 379 N.C. 660, 660 (2021) (order remanding case).

On remand, the trial court made findings of facts and conclusions of law and denied respondent's Rule 60(b) motion alleging ineffective assistance of counsel. Then, consistent with this Court's order, the parties supplemented the record on appeal and filed supplemental briefs for this Court. Thus, this appeal is now ripe for our full consideration.

## II.    Analysis

### A.  Jurisdiction

We first consider respondent's argument that the trial court lacked jurisdiction to enter the amended termination order after respondent had noticed her appeal because the trial court made substantive, not clerical, changes to the order. We agree that the trial court lacked jurisdiction to enter the amended termination order.

Generally, upon perfection of an appeal, N.C.G.S. § 1-294 "stays all further proceedings in the court below upon the judgment appealed from, or upon the matter embraced therein." N.C.G.S. § 1-294 (2021); *see also Am. Floor Mach. Co. v. Dixon*, 260 N.C. 732, 735 (1963) ("As a general rule, an appeal takes a case out of the jurisdiction of the trial court."). However, "[w]hen a specific statute addresses jurisdiction during an appeal . . . that statute controls over the general rule." *In re M.I.W.*, 365 N.C. 374, 377 (2012). This Court recognized in *In re M.I.W.* that the

legislature enacted a specific statute, N.C.G.S. § 7B-1003, regarding jurisdiction during an appeal for matters arising under the Juvenile Code that controls over N.C.G.S. § 1-294. *Id.* at 377–78. The legislature recognized that the "needs of the child may change while legal proceedings are pending on appeal," necessitating "a modified approach" to jurisdiction during an appeal in juvenile cases. *Id.* at 377.

As relevant to this appeal, N.C.G.S. § 7B-1003(b) provides as follows:

> (b) Pending disposition of an appeal, unless directed otherwise by an appellate court or subsection (c) of this section applies, the trial court shall:
> (1) Continue to exercise jurisdiction and conduct hearings under this Subchapter with the exception of Article 11 of the General Statutes; and
> (2) Enter orders affecting the custody or placement of the juvenile as the court finds to be in the best interests of the juvenile.

N.C.G.S. § 7B-1003(b) (2021).

Article 11 of the Juvenile Code is entitled and addresses termination of parental rights. N.C.G.S. § 7B-1100 to -1114 (2021). Thus, absent direction from an appellate court to the contrary, "N.C.G.S. § 7B-1003(b) does not divest the court of jurisdiction in termination proceedings during an appeal but does . . . prohibit the trial court from exercising jurisdiction in termination proceedings while disposition of an appeal is pending." *In re J.M.*, 377 N.C. 298, 2021-NCSC-48, ¶ 17.

> Exercising jurisdiction, in the context of the Juvenile Code, requires putting the [trial] court's jurisdiction into action by holding hearings, entering substantive orders or decrees, or making substantive decisions on the issues

before it. In contrast, having jurisdiction is simply a state of being that requires, and in some cases allows, no substantive action from the [trial] court.

*In re M.I.W.*, 365 N.C. at 379.

¶ 17    In this matter, after respondent filed her notice of appeal and before this Court took any action, the trial court entered an amended order with multiple additional findings of fact. Several of these findings of fact are neither findings of fact mentioned in the trial court's oral ruling nor duplicative of other findings of fact in the original termination-of-parental-rights order. Thus, we are not persuaded that these changes corrected a clerical mistake or error arising from oversight or omission. *See* N.C.G.S. § 1A-1, Rule 60(a) (2021) ("Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the judge at any time on his own initiative or on the motion of any party and after such notice, if any, as the judge orders. During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed in the appellate division, and thereafter while the appeal is pending may be so corrected with leave of the appellate division."). Rather, we conclude that the trial court exercised jurisdiction by entering a termination-of-parental-rights order that made substantive changes when the trial court lacked jurisdiction to do so under N.C.G.S. § 7B-1003(b). As a result, the amended termination-of-parental-rights order is void, and we only consider the original termination-of-parental-rights order that was entered on

29 October 2020 and the 23 February 2022 order entered after remand and pursuant to this Court's order.

**B. Continuance**

¶ 18    We next consider respondent's argument that the trial court abused its discretion by denying her counsel's motion to continue the termination hearing. Assuming without deciding that the trial court erred, we conclude that respondent has not shown that she was prejudiced by the denial of the motion to continue. Therefore, respondent is not entitled to any relief.

¶ 19    The record reflects that at the outset of the termination hearing, respondent had not appeared, and the trial court asked respondent's counsel if he had any contact with her. Counsel responded that respondent had bonded out of jail the night before and he had not heard from her and moved to continue the hearing in order to locate respondent. The trial court, after again determining that respondent was not in the courtroom, summarily denied the motion to continue. The trial court noted for the record that

> [respondent] was prepared for transport yesterday at some point, so she knew of today's court date. She did bond out, but she is not present today, despite the fact that she was aware yesterday and prepared to come to court yesterday. We do have the Respondent Father here, and we will

proceed.[3]

¶ 20        The standard of review for addressing motions to continue is well-established. When a respondent "did not assert in the trial court that a continuance was necessary to protect a constitutional right," appellate courts "review the trial court's denial of her motion to continue only for abuse of discretion." *In re A.L.S.*, 374 N.C. 515, 517 (2020). "Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *Id.* (cleaned up). "Continuances are not favored and the party seeking a continuance has the burden of showing sufficient grounds for it." *In re J.E.*, 377 N.C. 285, 2021-NCSC-47, ¶ 15 (cleaned up). Under the Juvenile Code, "[c]ontinuances that extend beyond 90 days after the initial petition shall be granted only in extraordinary circumstances when necessary for the proper administration of justice." N.C.G.S. § 7B-1109(d) (2021). "Moreover, regardless of whether the motion raises a constitutional issue or not, a denial of a motion to continue is only grounds for a new trial when [the respondent] shows both that the denial was erroneous, and that [the respondent] suffered prejudice as a result of the error." *In re A.L.S.*, 374 N.C. at 517 (cleaned up).

---

[3] Pursuant to this Court's order, the record has been supplemented concerning the basis for the trial court's first two statements. It is undisputed that the father was present for the termination hearing as reflected in the trial court's last statement.

¶ 21        In her supplemental brief, respondent contends that "[t]he trial court acknowledged that it acted upon incorrect information when it denied counsel's motion to continue," and "[h]ad Judge Barkley known all of the[ ] facts when the matter was called for hearing on September 4 it seems unlikely that he would have denied even a few minutes for counsel to locate [respondent]." Yet even taking respondent's presumption as true, respondent has not shown how she suffered prejudice as a result of the alleged error. Respondent has not shown that she "would have testified and that such testimony would have impacted the outcome of the proceeding." *In re C.C.G.*, 380 N.C. 23, 2022-NCSC-3, ¶ 14; *see also In re D.J.*, 378 N.C. 565, 2021-NCSC-105, ¶ 14 ("Based on the record before us, respondent's offer of proof fails to demonstrate the significance of the witness's potential testimony and any prejudice arising from the trial court's denial of her motion to continue."); *In re H.A.J.*, 377 N.C. 43, 2021-NCSC-26, ¶ 13 ("[B]ased upon the record before us, we conclude respondent-mother has failed to demonstrate prejudice. She has not demonstrated how her case would have been better prepared, or a different result obtained, had a continuance been granted."). Therefore, regardless of whether the denial of the motion to continue was erroneous, respondent is not entitled to any relief.

**C. Grounds for Termination**

¶ 22        We next consider respondent's argument that the trial court erred by

concluding that grounds existed to terminate her parental rights at the adjudicatory stage. Since the trial court's findings of fact support termination on the grounds of neglect pursuant to N.C.G.S. § 7B-1111(a)(1) and only one ground is necessary for termination, we conclude that the trial court did not err by adjudicating the ground of neglect and terminating respondent's parental rights.

¶ 23 At the adjudicatory stage, the trial court takes evidence, finds facts, and adjudicates the existence or nonexistence of the grounds for termination set forth in N.C.G.S. § 7B-1111. N.C.G.S. § 7B-1109(e). The trial court may terminate parental rights upon an adjudication of any one of the grounds in N.C.G.S. § 7B-1111(a). N.C.G.S. § 7B-1111(a); *see also In re E.H.P.*, 372 N.C. 388, 395 (2019). We review a trial court's adjudication to determine whether the findings are supported by clear, cogent, and convincing evidence and whether the findings of fact support the conclusions of law. *In re E.H.P.*, 372 N.C. at 392. "Findings of fact not challenged by respondent are deemed supported by competent evidence and are binding on appeal." *In re T.N.H.*, 372 N.C. 403, 407 (2019).

¶ 24 A trial court may terminate parental rights pursuant to N.C.G.S. § 7B-1111(a)(1) if "[t]he parent has abused or neglected the juvenile" as defined in N.C.G.S. § 7B-101. N.C.G.S. § 7B-1111(a)(1). A neglected juvenile is defined, in pertinent part, as a juvenile "whose parent, guardian, custodian, or caretaker does not provide proper

care, supervision, or discipline; . . . or who lives in an environment injurious to the juvenile's welfare . . . ." N.C.G.S. § 7B-101(15) (2019). As explained by this Court,

> [t]ermination of parental rights based upon this statutory ground requires a showing of neglect at the time of the termination hearing or, if the child has been separated from the parent for a long period of time, there must be a showing of a likelihood of future neglect by the parent. When determining whether such future neglect is likely, the [trial] court must consider evidence of changed circumstances occurring between the period of past neglect and the time of the termination hearing.

*In re R.L.D.*, 375 N.C. 838, 841 (2020) (cleaned up).

¶ 25    In this case, respondent argues that the trial court's findings of fact are insufficient to support termination on the ground of neglect because the trial court did not analyze respondent's ability to participate in the case plan or provide support to her children during her incarceration. Respondent also challenges finding of fact 40 as not supported by the evidence. We disagree: competent evidence supports finding of fact 40, and the findings of fact support the trial court's adjudication of neglect.

¶ 26    Here, the trial court's findings of fact reflect that the juveniles came into the custody of DSS on 21 September 2018. At that time, respondent was incarcerated. DSS contacted respondent by phone in jail and made efforts to locate an appropriate caregiver, but an appropriate caregiver could not be located. Respondent had a history of drug use and had tested positive for methamphetamines in September

2017. Susan also tested positive for amphetamines, cannabinoids, and methamphetamine at birth in 2017. Respondent stipulated to these facts and others, and the trial court entered an order adjudicating Bob, Sally, and Susan neglected and dependent juveniles on 24 January 2018. Thereafter, respondent entered into a case plan, which included: (1) submitting to a substance abuse assessment and following all recommended treatment; (2) complying with random drug screens; (3) completing a parenting capacity evaluation; (4) completing a parenting education program; (5) obtaining and maintaining safe and stable housing; (6) refraining from criminal activity; and (7) obtaining and maintaining a legal source of income.

The trial court further found as follows:

> 28. The respondent mother has not addressed the issues that led to the juvenile[s] being taken into care.
>
> 29. The respondent mother has continued to engage in criminal behavior, including incurring criminal charges while the minor children have been in [DSS]'s custody.
>
> 30. Respondent mother was arrested in July of 2019 for felony counts of larceny, fleeing to elude arrest, possession of a stolen vehicle, driving while license revoked, failure to maintain lane control, speeding, reckless driving to endanger, possession of stolen property, and possession of methamphetamine.
>
> 31. At the time of this hearing, the respondent mother had recently been released from custody and had pending charges in Burke and Catawba Counties.
>
> . . . .

34. [Respondent mother has] been out of custody at times while the minor children have been in [DSS]'s custody, but [has not] engaged with [DSS] or completed any part of [her] case plan[].

. . . .

38. Respondent mother does not have a child support order established and she has not voluntarily paid any support for the benefit of the juveniles since they came into [DSS]'s custody.

. . . .

40. [Respondent mother has not] provided any gifts, notes, letters or provided any necessities [for the juveniles] since the children came into [DSS]'s custody.

41. Pursuant to N.C.G.S. § 7B-1111(a)(1), [respondent mother has] neglected the juveniles as shown by findings [of] fact and conclusions of law contained in the adjudication order rendered by the Honorable Wesley W. Barkley and as specified above. There is a high likelihood of a repetition of the neglect if the juveniles were returned to the care and control of the [respondent mother as she has] not corrected the conditions that led to the removal of the juveniles.

¶ 28    Respondent only challenges finding of fact 40 as not supported by clear, cogent, and convincing evidence. However, at the termination-of-parental-rights hearing, a DSS social worker responded "no" when asked whether respondent had provided "anything" for her children. Given this testimony, the trial court could find that respondent had not provided the juveniles with any gifts, notes, letters, or necessities since they entered into DSS's custody. *See In re D.L.W.*, 368 N.C. 835, 843 (2016)

(stating that it is the trial court's duty to consider all the evidence, pass upon the credibility of the witnesses, and determine the reasonable inferences to be drawn therefrom). Thus, we conclude that finding of fact 40 is supported by clear, cogent, and convincing evidence.

¶ 29 We also reject respondent's argument that the findings of fact do not support the trial court's adjudication of neglect. This Court has stated:

> Our precedents are quite clear—and remain in full force— that incarceration, standing alone, is neither a sword nor a shield in a termination of parental rights decision. How this principle applies in each circumstance is less clear. While respondent's incarceration, by itself, cannot serve as clear, cogent, and convincing evidence of neglect, it may be relevant to the determination of whether parental rights should be terminated.

*In re J.S.*, 377 N.C. 73, 2021-NCSC-28 ¶ 21 (cleaned up).

¶ 30 Here, the findings of fact reflect respondent had been out of custody at times while the juveniles were in DSS's custody but did not engage with DSS or completed *any* part of her case plan. Further, respondent did not provide gifts, notes, letters, necessities, or financial support to Bob, Sally, or Susan. Notably, respondent also continued to engage in criminal behavior and incurred criminal charges while Bob, Sally, and Susan were in DSS's custody. Respondent's case plan required her to refrain from criminal activity.

¶ 31 Given the foregoing, we are not persuaded by respondent's arguments. Continued criminal activity and a failure to complete a case plan when not

incarcerated for the entirety of the case supports a determination of likelihood of future neglect. *See In re J.E.*, 377 N.C. 285, 2021-NCSC-47, ¶ 26; *In re J.M.J.-J.*, 374 N.C. 553, 566 (2020). Further, while recognizing the potential limitations of incarceration, our precedent does not excuse parents who are incarcerated from "showing interest in the child's welfare by whatever means available," and "requir[es parents] to do what they can to exhibit the required level of concern for their children." *In re A.G.D.*, 374 N.C. 317, 320 (2020) (cleaned up). Thus, we are not convinced that respondent's periods of incarceration should excuse respondent from failing to provide any gifts, notes, letters, necessities, or financial support to her children for almost two years. *See In re W.K.*, 376 N.C. 269, 278–79 (2020) (stating that father's failure to send cards or gifts, despite being able to do so, supported a determination that neglect would reoccur should his children be returned to his care). Therefore, we conclude that the findings of fact support the trial court's conclusion of neglect.

¶ 32    Because the trial court's conclusion that a ground for termination existed pursuant to N.C.G.S. § 7B-1111(a)(1) is sufficient in and of itself to support termination of respondent's parental rights, *In re E.H.P.*, 372 N.C. at 395, we need not address respondent's arguments regarding N.C.G.S. § 7B-1111(a)(2), (3) and (7). Furthermore, respondent does not challenge the trial court's conclusion at the dispositional stage that termination of her parental rights was in the juveniles' best

interests.

**D. Ineffective Assistance of Counsel Claim**

¶ 33 On appeal in her initial briefs and at oral argument, respondent alleged that she received ineffective assistance of counsel at the termination hearing and claimed that her counsel failed to secure her presence at hearings, seek visitation, file a response to the petition to terminate her parental rights, assert her due process concerns when moving to continue the termination hearing, and advocate for her at the termination hearing.

¶ 34 After oral arguments, this Court remanded to the trial court in the exercise of its discretion "for the trial court to hear respondent-mother's claim of ineffective assistance of counsel." *In re B.B.*, 379 N.C. at 660. We observed that the "record before this Court contains no findings of fact or conclusions of law as to the claim of ineffective assistance of counsel because respondent-mother asserted her claim of ineffective assistance of counsel for the first time on appeal and has not sought relief from the trial court." *Id.* We provided that "within ten days of this order, appellate counsel for respondent-mother may file a Rule 60(b) motion with evidentiary support to set aside the termination-of-parental-rights order as to respondent-mother for ineffective assistance of counsel." *Id.* Additionally, if such a motion was filed, we ordered the trial court to hold an evidentiary hearing if necessary and "enter an order with any necessary findings of fact and conclusions of law" needed to address

respondent-mother's Rule 60(b) motion regarding ineffective assistance of counsel. *Id.* at 661.

On remand, the trial court held an evidentiary hearing and entered an order with findings of fact and conclusions of law. The trial court concluded that respondent failed to provide any evidence or argument showing a reasonable probability that, but for deficient counsel, a different result would have been reached in the termination proceeding. Thus, the trial court denied respondent's Rule 60(b) motion.

In her supplemental brief, respondent presented several arguments. First, respondent challenges the trial court's finding of fact "that there was no evidence that could have been presented to alter the result of the termination proceeding" and cites to findings of fact 42 and 44 through 50. The cited findings of fact from the trial court's order are as follows:

> 42. Throughout the underlying case, the respondent mother did not inform [her trial counsel] of any actions she had taken to be reunited with her children or any argument he needed to make regarding her progress, despite having the opportunity to do so.
>
> . . . .
>
> 44. The respondent mother did not provide evidence of what she would have testified to at the termination of parental rights hearing, had she been present.
>
> 45. The respondent mother did not identify evidence or witnesses that should have been presented at the termination of parental rights hearing, other than testifying that she wanted to provide gifts and letters

to her children. As noted, the court finds that no such efforts were made prior to the filing of the motion for termination of parental rights.

46.  There is no evidence that the respondent mother could have been presented in a more favorable manner on September 4, 2020 at the termination hearing.

47.  In the absence of any showing of evidence or testimony that could have been presented, the court finds that, even if respondent mother had been present and available at every hearing throughout the pendency of the underlying case, the outcome of the termination hearing would have been the same.

48.  The court received no evidence to contradict its findings in the underlying order supporting grounds for termination under N.C.G.S. § 7B-1111(a)(l), (2), or (7).

49.  There is no evidence that the outcome of the termination hearing would have been different had her trial counsel's performance been different.

50.  The respondent mother was not prejudiced by her trial counsel's performance.

¶ 37    However, the cited findings of fact, which are quoted above, do not contain a finding "that there was no evidence that *could* have been presented to alter the result of the termination proceeding." (Emphasis added.) The trial court did find that respondent did not put forth material evidence that could have been presented at the termination hearing, but these are not analogous. Thus, there is no finding of fact for this Court to review as it relates to respondent's argument, and we are bound to the findings of facts. *In re K.N.L.P.*, 2022-NCSC-39, ¶ 15 (2022). Later in this opinion, we

address respondent's argument that the trial court erred by concluding that she failed to put forward evidence to meet her burden to show that there is a reasonable probability that, but for counsel's errors, there would have been a different result in the proceedings. However, that does not appear to be the argument respondent makes here.

Second, respondent argues that the trial court erred by not applying the correct standard to assess prejudice. Respondent-mother claims that the trial court "held that respondent-mother failed to present evidence at the Rule 60 hearing showing that she would have 'won' and received a favorable ruling at the termination hearing." However, as stated in the trial court's order, the trial court articulated and applied the standard of "reasonable probability," which is consistent with our precedent. The trial court stated:

> 8. Respondent mother was not prejudiced by her trial counsel's performance, either in the termination hearing or the underlying case, in that she did not establish a reasonable probability that the outcome of the termination hearing (or other hearings) would have been different but for trial counsel's conduct.

This Court has explained that:

> To prevail on a claim of ineffective assistance of counsel, respondent must show that counsel's performance was deficient and the deficiency was so serious as to deprive him of a fair hearing. *To make the latter showing, the respondent must prove that there is a reasonable probability that, but for counsel's errors, there would have been a different result in the proceedings.*

*In re G.G.M.*, 377 N.C. 29, 2021-NCSC-25, ¶ 35 (cleaned up) (emphasis added). Respondent's initial brief acknowledges that our precedent requires this showing, citing *In re T.N.C.*, 375 N.C. 849, 854 (2020).

¶ 40    Applying this standard in proceedings under the Juvenile Code, we routinely resolve claims of ineffective assistance of counsel on the respondent's failure to show prejudice. S*ee, e.g.*, *In re Z.M.T.*, 379 N.C. 44, 2021-NCSC-121, ¶ 17; *In re B.S.*, 378 N.C. 1, 2021-NCSC-71, ¶ 13; *In re N.B.*, 377 N.C. 349, 2021-NCSC-53, ¶ 30; *In re J.M.*, 377 N.C. 298, 2021-NCSC-48, ¶ 36; *In re G.G.M.*, ¶ 35. Resolving claims of ineffective assistance of counsel on the respondent's failure to show prejudice is consistent with the recommendation by the Supreme Court of the United States and this Court's precedent in criminal proceedings. *State v. Braswell*, 312 N.C. 553, 563 (1985) ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result." (quoting *Strickland v. Washington*, 466 U.S. 668, 697 (1984)).

¶ 41   Third, respondent argues that the trial court erred by failing to consider the cumulative effect of respondent's trial counsel's deficient performance and by not correctly applying the standard to assess prejudice. However, the trial court's conclusion of law eight reflects that the trial court considered cumulative prejudice. The trial court expressly considered whether respondent was prejudiced by her trial counsel's performance both "in the termination hearing" and "in the underlying case." Yet, as discussed, the trial court's findings of fact supporting these conclusions were either unchallenged or supported by competent evidence. Accordingly, were we to address this argument, we would be bound to affirm the trial court's conclusion that respondent was not cumulatively prejudiced. Because the trial court in this case did consider cumulative prejudice, we need not address whether cumulative prejudice must be considered by the trial court in this context.

¶ 42   Given the binding findings of fact before us, we agree with the trial court that respondent failed to put forward evidence to meet her burden to show that there is a reasonable probability that, but for counsel's errors, there would have been a different result in the proceedings. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive

> effect on the inferences to be drawn from the evidence,
> altering the entire evidentiary picture, and some will have
> had an isolated, trivial effect. Moreover, a verdict or
> conclusion only weakly supported by the record is more
> likely to have been affected by errors than one with
> overwhelming record support. Taking the unaffected
> findings as a given, and taking due account of the effect of
> the errors on the remaining findings, a court making the
> prejudice inquiry must ask if the defendant has met the
> burden of showing that the decision reached would
> reasonably likely have been different absent the errors.

*Id.* at 695–96.

¶ 43        In the case before us, the same trial court judge presided over the termination hearing and respondent's Rule 60(b) motion. The trial court had the totality of the evidence before him, and we do as well. We are not persuaded that a probability sufficient to undermine confidence in the outcome exists. Respondent testified that throughout the case, her trial counsel called or emailed her back every time she reached out by phone or email and that they would discuss what she could do to see her children, what she could do to get visitation, and what she could do to get her parental rights back. She testified that her trial counsel communicated with her at least 26 times throughout the length of the case. She further testified that she had met with the social worker and signed the case plan and knew what she was supposed to do for her plan without discussing it with her trial counsel. As found by the trial court, respondent understood her case plan, but respondent did not complete any element of her case plan and during the pendency of the case was both convicted of

new criminal charges and violated her probation. Even if trial counsel has erred in some aspects of his representation,

> [a]ttorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. They cannot be classified according to likelihood of causing prejudice. Nor can they be defined with sufficient precision to inform defense attorneys correctly just what conduct to avoid.

*Strickland*, 466 U.S. at 693. Therefore, we do not attempt to define what is correct and what to avoid, but merely hold that on the record before us, respondent is not entitled to relief from the trial court's termination-of-parental-rights order on the basis of ineffective assistance of counsel. Respondent was given the opportunity to prove her claim of ineffective assistance of counsel on remand before the trial court through an evidentiary hearing by an extraordinary act of discretion by this Court. Respondent failed to do so.

### III.   Conclusion

While the trial court's amended termination order was entered without jurisdiction pursuant to N.C.G.S. § 7B-1003(b), we conclude that the findings of fact in the trial court's original 29 October 2020 order supported the adjudication on the ground of neglect pursuant to N.C.G.S. § 7B-1111(a)(1). Respondent has not challenged the trial court's determination at the dispositional phrase. We have also concluded that the respondent failed to show prejudice from the denial of her counsel's motion to continue at the termination-of-parental-rights hearing and failed

to show prejudice for any alleged error by her trial counsel. Accordingly, we affirm the trial court's order terminating respondent's parental rights to her children, Bob, Sally, and Susan, and the trial court's order denying respondent's Rule 60(b) motion regarding ineffective assistance of counsel.

AFFIRMED.

Justice EARLS dissenting.

A parent's right to effective representation in juvenile proceedings is an individual right that secures a broader structural principle. The right to counsel safeguards an individual parent's fundamental liberty interests by ensuring the parent is not subject to the unnecessary and permanent dissolution of their rights in their child. *In re T.N.C.*, 375 N.C. 849, 854 (2020) ("By providing a statutory right to counsel in termination proceedings, our legislature has recognized that this interest must be safeguarded by adequate legal representation.") (quoting *In re Bishop*, 92 N.C. App. 662, 664 (1989)). At the same time, the right to counsel furthers the State's *parens patriae* interest in protecting a child's welfare by facilitating the "adversarial system of justice" necessary to "ascertain the truth in any legal proceeding," in the process helping the State determine what a child's best interests require. *In re Miller*, 357 N.C. 316, 334 (2003). Thus, a deprivation of a parent's right to counsel imposes both an individual and systemic harm: it jeopardizes the parent's constitutional rights as a parent and diminishes the capacity of juvenile proceedings to deliver just and accurate results based on something approaching "the truth."

In this case, there is no real dispute that respondent-mother did not receive adequate representation during the juvenile and termination proceedings involving her children: Bob, Sally, and Susan. Respondent-mother was in and out of jail throughout these proceedings. On numerous occasions, the trial court issued a writ

to bring respondent-mother to court to participate in hearings, but she was not brought to court. Counsel did not vigorously defend respondent-mother's interests in her absence. Instead, at the final permanency planning hearing, another hearing respondent-mother was not brought to court to attend, respondent-mother's attorney informed the court that he "had not had any recent contact from his client," so he "consented to the Court receiving the court report and moving forward without his presence" because "he had another matter in another courtroom." Counsel did not file a responsive pleading to DSS's motion to terminate respondent-mother's parental rights, even though respondent-mother mailed the court a handwritten note stating that she wanted to "stop the termination process of my parental rights." At the termination hearing, counsel asked two questions of DSS's sole witness but otherwise offered no defense and made no argument on respondent-mother's behalf.

¶ 47        Under these circumstances, I cannot agree with the majority that respondent-mother's ineffective assistance of counsel (IAC) claim should be denied for failure to show prejudice. Although there is a paucity of evidence in the record indicating how respondent-mother could have rebutted the grounds for termination found by the trial court at the termination hearing, counsel's prolonged, repeated failure to adequately represent respondent-mother at every stage of these proceedings fatally undermined their validity as a mechanism for determining "the truth." Therefore, I would hold that respondent-mother has demonstrated prejudice because she has

shown that "counsel's errors were so serious as to deprive the defendant of a fair [hearing], a [hearing] whose result is reliable." *State v. Braswell*, 312 N.C. 553, 562 (1985) (emphasis omitted) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). I respectfully dissent.

## I.    Prejudice under *Strickland*

There are two main problems with the majority's analysis of respondent-mother's IAC claim.

The first is that the majority's articulation of how respondent-mother can demonstrate prejudice is unduly narrow and ignores a central concern animating *Strickland* and IAC doctrine—the critical importance of adequate representation to ensuring the integrity and validity of the adversarial process. The majority is correct that a party asserting IAC must demonstrate prejudice, and that the way courts typically examine prejudice is by assessing whether the party asserting IAC "prove[d] that there is a reasonable probability that, but for counsel's errors, there would have been a different result in the proceeding." *In re G.G.M.*, 377 N.C. 29, 2021-NCSC-25, ¶ 35 (cleaned up). But the "reasonable probability" standard does not require a party to establish that counsel's deficient performance was outcome-determinative. *Strickland*, 466 U.S. at 693 ("[A] defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case."). *Strickland* itself cautioned that "that the principles we have stated do not establish mechanical rules."

*Id.* at 696. Instead, the Supreme Court emphasized that

> the ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged. In every case the court should be concerned with whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.

*Id.*

¶ 50         "The right to counsel exists in order to protect the fundamental right to a fair trial," or in this case a fair termination hearing. *Lockhart v. Fretwell*, 506 U.S. 364, 368 (1993) (cleaned up). Accordingly, the prejudice prong of *Strickland* is ultimately concerned with distinguishing between instances of deficient performance that do not undermine the reliability of an adversarial proceeding and those that do. The goal of the inquiry is to assess whether counsel's deficient performance "rose to the level of compromising the reliability of the [outcome of a proceeding] and undermining confidence in it." *Theriault v. State*, 125 A.3d 1163, 2015 ME 137, ¶ 25; *see also Fretwell,* 506 U.S. at 372 ("[T]he 'prejudice' component of the Strickland test . . . focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair."). Oftentimes, this can be demonstrated by projecting what might have happened had counsel performed adequately. But in some cases, counsel's deficient performance completely undermines the validity of a supposedly adversarial proceeding as a mechanism for

determining facts. In these rare circumstances, it is unnecessary to attempt to reconstruct what *might* have happened because what *did* happen produced a record and set of facts lacking all indicia of trustworthiness. *See, e.g., Williams v. Taylor*, 529 U.S. 362, 391 (2000) ("It is true that while the *Strickland* test provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims, there are situations in which the overriding focus on fundamental fairness may affect the analysis."); *cf. United States v. Cronic,* 466 U.S. 648, 658 (1984) (holding in a case decided the same day as *Strickland* that in some cases, the circumstances were "so likely to prejudice the accused" that prejudice does not have to be proven.). In certain instances, the question the reasonable probability test was designed to answer— whether or not the proceeding was fundamentally fair—has already been answered. *See Griffin v. Aiken*, 775 F.2d 1226, 1229 (4th Cir. 1985) ("[E]ven though it is to be presumed that counsel is competent, certain circumstances may indicate a breakdown in the adversarial process which will justify a presumption of ineffectiveness without inquiry into counsel's actual performance at trial.")

¶ 51  In these circumstances, efforts to project what might have happened had counsel performed adequately will be based on little more than an appellate court's speculative guesswork. The reliability of this retrospective exercise is itself predicated on there being a reasonably well-developed record and established set of facts, which must be elicited and determined by the trial court. *See State v. Smith*,

278 N.C. 36, 41 (1971) (explaining that the trial court "sees the witnesses, observes their demeanor as they testify and by reason of his more favorable position, he is given the responsibility of discovering the truth"). Assessing prejudice by projecting what might have happened based on a record and set of facts developed over the course of multiple hearings where a party repeatedly received deficient representation places that party "in an impossible bind," because counsel's performance is "so deficient that it deprived her of the opportunity to develop a record which would support her claim of prejudice[.]" *In re Z.M.T.*, 379 N.C. 44, 2021-NCSC-121, ¶ 20 (Earls, J., dissenting). Because "[t]he assistance of counsel is often a requisite to the very existence of a fair [proceeding]," *Argersinger v. Hamlin*, 407 U.S. 25, 31 (1972), it is perverse to deny a party's IAC claim on the basis of a retrospective review of a record and set of facts produced in a set of proceedings where counsel's performance was wholly deficient.

¶ 52         Moreover, the majority's conclusion that it is routine and, indeed, preferable to resolve IAC claims by presuming that the representation was ineffective and jumping right to the question of whether there was a sufficient showing of prejudice disserves justice and the interests IAC doctrine aims to protect. *See United States v. DiTommaso*, 817 F.2d 201, 215 (2d Cir. 1987) ("The benchmark for judging any such claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having

produced a just result."). Resolving IAC claims by explaining why counsel's performance was constitutionally inadequate does not require us to inappropriately "grade counsel's performance"; rather, our refusal to do so constitutes an abandonment of our obligation to ensure the fair administration of justice. In our adversarial system, due process demands that parties have adequate opportunities to avail themselves of the advice of counsel and the services of an advocate who will present to a neutral fact finder the evidence and arguments that support their case. *Cf. Herring v. New York*, 422 U.S. 853, 862 (1975) ("The very premise of our adversary system of . . . justice is that partisan advocacy on both sides of a case will best promote the ultimate objective" of discerning the truth). Concluding that justice has been done in the absence of a meaningful adversarial process, based upon our own speculation that the result of a reliable process would not have been different, when our projection of what the result would have been is itself based upon the record and facts developed during a wholly untrustworthy proceeding, is little more than a convenient and comforting fiction.

¶ 53       The second problem with the majority's prejudice analysis is its refusal to meaningfully engage respondent-mother's cumulative prejudice claim. Under the cumulative prejudice doctrine, "instances of counsel's deficient performance may be aggregated to prove cumulative prejudice." *State v. Allen*, 378 N.C. 286, 2021-NCSC-88, ¶ 42. Cumulative prejudice may arise in circumstances such as this one where

counsel performs deficiently numerous times or in various ways while representing a party. *See Cooper v. Fitzharris*, 586 F.2d 1325, 1333 (9th Cir. 1978) ("If counsel is charged with multiple errors at trial, absence of prejudice is not established by demonstrating that no single error considered alone significantly impaired the defense [because] prejudice may result from the cumulative impact of multiple deficiencies."). Because legal proceedings are dynamic, it is often difficult to isolate the effects of any one instance of deficient performance—counsel's failure to provide adequate representation at multiple points in a proceeding might fundamentally alter the course of that proceeding, even though the harm to a party's interests cannot easily or entirely be traced to a single instance.

¶ 54    In stating that it "need not address whether cumulative prejudice must be considered by the trial court" because the trial court's conclusions of law reveal that it "considered cumulative prejudice," the majority implies that it is an open question whether a court must review for cumulative prejudice when a party brings an ineffective assistance of counsel claim alleging multiple discrete instances of deficient performance.[1] But this question was asked and answered in *State v. Allen*, 378 N.C.

---

[1] The majority further suggests that because, in their view, respondent-mother did not challenge the trial court's findings of fact or those findings were supported by the evidence, "were we to address this argument, we would be bound to affirm the trial court's conclusion that respondent was not cumulatively prejudiced." However, that is not correct because it completely abdicates our duty as an appellate court to examine whether the findings of fact support the trial court's conclusions of law. *See In re E.H.P.*, 372 N.C. 388, 392 (2019) ("We review a trial court's adjudication under N.C.G.S. § 7B-1111 'to determine whether the findings are supported by clear, cogent and convincing evidence and the findings

286, 2021-NCSC-88. In *Allen*, we explained that a trial court considering an IAC claim raised in a motion for appropriate relief

> must examine whether any instances of deficient performance at discrete moments in the trial prejudiced Allen when considered both individually and cumulatively. We reject the MAR court's erroneous conclusion that cumulative prejudice is unavailable to a defendant asserting multiple IAC claims. . . . [W]e adopt the reasoning of the unanimous Court of Appeals panel which recently concluded that "because [IAC] claims focus on the reasonableness of counsel's performance, courts can consider the cumulative effect of alleged errors by counsel." *State v. Lane*, 271 N.C. App. 307, 316, 844 S.E.2d 32, *review dismissed*, 376 N.C. 540, 851 S.E.2d 367 (2020), *review denied*, —— N.C. ——, 851 S.E.2d 624 (2020). To be clear, only instances of counsel's deficient performance may be aggregated to prove cumulative prejudice—the cumulative prejudice doctrine is not an invitation to reweigh all of the choices counsel made throughout the course of representing a defendant.

*Id.* ¶ 42 (footnote omitted). We further explained that "[o]ur decision to recognize cumulative prejudice claims is based upon our own interpretation of *Strickland* and IAC doctrine," establishing that cumulative prejudice doctrine applies to *all* IAC claims derived from *Strickland*. *Id.* ¶ 42 n.8. The dissenting opinion in *Allen* disputed the majority's interpretation of our caselaw and this doctrine, but the dissenting opinion acknowledged that, post-*Allen,* cumulative prejudice doctrine would be part of "North Carolina's jurisprudence on ineffective assistance of counsel claims," *Id.*

---

support the conclusions of law.' " (quoting *In re Montgomery*, 311 N.C. 101, 111 (1984) (citing *In re Moore*, 306 N.C. 394, 404 (1982)).

¶ 80 (Berger, J., dissenting). *Allen* is controlling precedent, and this Court is "bound by prior precedent [under] the doctrine of stare decisis." *In re O.E.M.*, 379 N.C. 27, 2021-NCSC-120, ¶ 12 (quoting *Bacon v. Lee*, 353 N.C. 696, 712 (2001)). Under *Allen*, a trial court is required to review a party's IAC claim for cumulative prejudice, notwithstanding the majority's suggestions to the contrary. This Court must do the same on appeal, where the trial court's legal determination that a party has not demonstrated cumulative prejudice is reviewed de novo. *State v. Clark*, 380 N.C. 204, 2022-NCSC-13, ¶ 31 ("Whether a defendant was denied the effective assistance of counsel is a question of law that is reviewed de novo.").

¶ 55　　　Applying the proper prejudice standard to the facts of this case, I would conclude that respondent-mother has demonstrated she was prejudiced by her counsel's multiple instances of deficient performance. This case differs significantly from the typical case involving an IAC claim in a termination proceeding. In most cases, an appellate court reviews a claim that a respondent-parent received ineffective assistance in a termination proceeding alone, not that the parent received ineffective assistance during the underlying juvenile proceedings leading up to the termination hearing. *See, e.g.*, *In re M.Z.M.*, 251 N.C. App. 120, 124 (2016) ("Respondent-mother claims she received ineffective assistance of counsel ('IAC') at the termination hearing."). In those types of cases, an appellate court can conduct a prejudice analysis based on the record and set of facts developed and determined by

the trial court during the underlying proceedings, which allow the appellate court to assess with a reasonable degree of certainty the probable impact of counsel's deficient performance at the termination hearing.

¶ 56      This case is different. In this case, respondent-mother's counsel failed to secure her presence in court on numerous occasions, failed to maintain ongoing communication with her during the course of proceedings, failed to file a responsive pleading to DSS's termination motion, failed to advocate on respondent-mother's behalf during the underlying juvenile proceedings, and failed to raise any defense at the termination hearing. These actions and omissions fall far short of what is necessary to provide a respondent-parent with adequate representation. While the precise standard for adequate performance might vary depending upon the context and nature of a given proceeding, given the stakes involved for parents in juvenile matters, adequate representation would generally require counsel to do things like

- Communicate regularly with clients (at least monthly and after all significant developments or case changes) and in-person when possible;"

. . . .

- Thoroughly prepare for and attend all court hearings and reviews.

- Thoroughly prepare clients for court, explain the hearing process and debrief after hearing are complete to make sure clients understand the results. For children this must be done in a developmentally appropriate way.

. . . .

- Conduct rigorous and complete discovery on every case.

- Independently verify facts contained in allegations and reports.

- Have meaningful and ongoing conversation with all clients about their strengths, needs, and wishes.

. . . .

- Work with every client to identify helpful relatives for support, safety planning and possible placement.

- Attend and participate in case planning, family group decision-making and other meetings a client may have with the child welfare agency.

- Work with clients individually to develop safety plan and case plan options to present to the court.

- File motions and appeals when necessary to protect each client's rights and advocate for his or her needs.

United States Department of Health and Human Services, Administration on Children, Youth and Families, *High Quality Legal Representation for All Parties in Child Welfare Proceedings* 13 (2017). Respondent-mother did not receive adequate representation under the circumstances of this case.

These repeated failures deprived respondent-mother of a fundamentally fair termination proceeding and deprive this Court of a record and set of facts that allow us to reasonably assert respondent-mother's rights would have been terminated even if she had received adequate representation. These basic legal principles are usefully

illustrated by a case out of Oregon, *In State ex rel. State Office for Services to Children & Families v. Thomas (In re Stephens),* 170 Or. App. 383 (2000). The facts of *In re Stephens* are very similar to this case. In *In re Stephens*, the father failed to appear for the termination hearing. He was in a residential treatment center at the time of the hearing, and his attorney did not obtain a subpoena for his attendance or notify personnel at the center about the need to have the father at the hearing. Although counsel was present at the hearing, he made no opening statement except to say that his client could be a good father and was in treatment. He made no closing argument. He did not call witnesses, offer any exhibits, or cross-examine most of the witnesses. Counsel also admitted that he was not prepared for trial, in part, because of the father's absence. The court concluded that the attorney's lack of preparation and failure to advocate any theory for the father rendered his performance inadequate. The court also, on that record, found that his counsel's failure to defend his interests was prejudicial:

> Essential to our conclusion is the fact that the trial court was not given the opportunity to judge the credibility of the father's case or his evidence, whatever father's case and evidence may in fact be. . . . In a situation, as here, where father wanted to put on a case, where there is some credible evidence that father could be a resource for child, and where counsel has not effectively advocated *any* theory of father's case, father has not been heard. Accordingly, we will not conclude that the result would have inevitably been the same.

*In re Stephens,* 170 Or. App at 395–96; *see also In re J.J.L.*, 2010 MT 4, 355 Mont. 23,

223 P.3d 921 (2010) (concluding that trial counsel rendered deficient performance by failing to object to hearsay evidence, making no other objections, asking no questions on cross-examination, and not meeting with client prior to termination hearing). For similar reasons, the North Dakota Supreme Court has held that failure to provide counsel to an indigent parent in a juvenile proceeding may *never* be harmless error:

> We are skeptical that the denial of counsel to an indigent parent in an adoption proceeding which results in the termination of parental rights can ever be "harmless," under any standard. It is, after all, an axiom in criminal cases that counsel enables an accused to procure a fair trial, and the formality of these termination and adoption proceedings, along with their substantial threat to a fundamental interest of the parent, is not so different from those in a criminal case.

*Matter of Adoption of K.A.S.*, 499 N.W.2d 558, 567 (N.D. 1993) (citation omitted). Given how wholly inadequate counsel's performance was in this case, the logic should apply.

¶ 58        Here, for example, because respondent-mother was in and out of jail throughout the course of these proceedings, an assessment of her progress on her case plan and the applicability of the asserted grounds for termination required an assessment of the constraints imposed by her incarceration. *See In re K.N.*, 373 N.C. 274, 283 (2020) ("[R]espondent's incarceration, by itself, cannot serve as clear, cogent, and convincing evidence of neglect. Instead, the extent to which a parent's incarceration or violation of the terms and conditions of probation support a finding

of neglect depends upon an analysis of the relevant facts and circumstances."). But because counsel never raised the issue at a permanency planning hearing, and because respondent-mother was never brought to court to raise the issue or present factual evidence herself, the trial court never considered whether the terms of respondent-mother's case plan needed to be adapted in view of the services available to her in jail. Because counsel did not file an answer to the termination motion and did not advocate for respondent-mother at the termination hearing, the trial court never examined the extent to which the existence of grounds for termination resulted from the fact of respondent-mother's incarceration alone. *In re M.A.W.*, 370 N.C. 149, 153 (2017) ("Our precedents are quite clear—and remain in full force—that incarceration, standing alone, is neither a sword nor a shield in a termination of parental rights decision.") (cleaned up). The opportunity to create a record that could support the claim that the outcome of the termination hearing might have been different was lost due to counsel's deficient performance at all stages of these proceedings. In no meaningful sense do these circumstances establish that the termination of respondent-mother's parental rights resulted from "a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687.

## II.   Respondent-mother's challenge to the trial court's findings of fact

In addition to the majority's improper application of the prejudice standard, the majority also errs in sidestepping respondent-mother's challenge to the trial

court's findings of fact by adopting a strained, unnecessary, and formalistic reading of the argument raised in her brief. According to the majority, respondent-mother failed to challenge any of the findings of fact the trial court actually entered because the trial court did not enter the finding respondent-mother purported to challenge, the finding "that there was no evidence that could have been presented to alter the result of the termination proceeding." It is correct that there is no finding precisely stating "that there was no evidence that could have been presented to alter the result of the termination proceeding" in those exact words. But the trial court did find that "[i]n the absence of any showing of evidence or testimony that could have been presented, the court finds that, even if respondent-mother had been present and available at every hearing throughout the pendency of the underlying case, the outcome of the termination hearing would have been the same." Substantively, there is no difference between the finding respondent-mother challenges and the finding the trial court entered. Both mean exactly the same thing: that, in the trial court's view, respondent-mother had failed to note any evidence that "could have been presented" during the termination proceeding (or underlying juvenile proceeding) that would have changed its ultimate outcome.

¶ 60       There is no requirement in our rules of appellate procedure stating that appellants must list the specific findings of fact being challenged using the precise words utilized by the factfinder in order to challenge findings of fact on appeal. We

have never before imposed such a requirement in our caselaw. There is good reason not to. This Court has moved away from overly technical rules of appellate procedure in recent years, amending Rule 10 to eliminate the requirement that litigants must list specific "exceptions" and "assignments of error" to properly present an issue on appeal. *See Malone-Pass v. Schultz*, 868 S.E.2d 327, 2021-NCCOA-656, ¶ 15 (describing changes to Rules of Appellate Procedure effective as of October 2009). Consistent with this more reasonable approach, and based on the text of the current Rule 10, we have held that a party preserves an issue for appellate review by making a general objection when "what action is being challenged and why the challenged action is thought to be erroneous . . . are 'apparent from the context[.]' " *State v. McLymore*, 380 N.C. 185, 2022-NCSC-12, ¶ 17. We should utilize the same approach in this context. Unchallenged findings of fact are always binding on appeal, but if it is "apparent from the context" that a party is challenging a particular finding of fact, we should not evade our obligation to review the trial court's findings to determine if they are supported by the record evidence.

## III.    Conclusion.

Once again, this Court's decision to deny a respondent-parent's claim that she received ineffective assistance of counsel in a juvenile proceeding "gives short shrift to an important guarantor of the fairness of our juvenile system." *In re Z.M.T.*, 379 N.C. 44, 2021-NCSC-121, ¶ 21 (Earls, J., dissenting). Although I recognize the State's

interest in protecting the welfare of the children subject to these proceedings and the children's concomitant need for permanency, the juvenile system suffers when we refuse to correct the erosion of rights guaranteed to parents in juvenile proceedings. The record in this case demonstrates that respondent-mother's counsel's representation in this instance was so deficient as to undermine the validity and reliability of the juvenile and termination proceedings entirely. Accordingly, I would reverse the order terminating respondent-mother's parental rights and remand for further proceedings.